UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DONTAE BOYKIN, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 22-cv-3057-JBM |
| PAT SMITH, *et al.*, | ) ) ) |
| Defendants. | ) |

### MERIT REVIEW ORDER – AMENDED COMPLAINT

Plaintiff Dontae Boykin, proceeding *pro se* and currently incarcerated at Graham Correctional Center ("Graham"), files an amended complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs while previously housed at Taylorville Correctional Center ("Taylorville"). (Doc. 19). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the amended complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### BACKGROUND

On April 14, 2022, while housed at Graham Correctional Center, Plaintiff filed his initial complaint alleging that various Defendants were deliberately indifferent to his serious medical needs, namely his shoulder injury, while he was detained at the Cook County Jail and incarcerated

1

at other facilities. (Doc. 1). Plaintiff alleged that before his arrest on January 28, 2014, he was being evaluated for surgery for an acromioclavicular joint separation and hairline fracture to his clavicle. While detained in the Cook County Jail, he allegedly did not receive proper medical treatment before he was transferred to Stateville Correctional Center in June 2016, and thereafter to Western Correctional Center, and then to Dixon Correctional Center in September 2017, where he was told by a physical therapist that his shoulder had healed incorrectly and surgery could make his shoulder worse. Apparently, he was released from imprisonment in 2019, but has been in and out of prison ever since due to violations of his release conditions, culminating in his current incarceration at Graham Correctional Center.

On July 16, 2022, this Court conducted a merit review of Plaintiff's complaint under § 1915A. (Doc. 11). The Court dismissed the complaint as barred by the statute of limitations and for failure to state a claim. *Id.* at 6. Plaintiff was given leave to amend. *Id.* The Court stated that the medical professionals who had been treating Plaintiff during his most recent incarceration might be proper defendants, but Plaintiff would need to name each one and explain how they were responsible for his lack of care. *Id.* The Court warned Plaintiff that this action would be dismissed with prejudice if he failed to state a viable federal claim in the amended complaint. *Id.* at 6-7.

## ALLEGATIONS

Plaintiff filed his amended complaint on October 21, 2022. (Doc. 19). Plaintiff names Taylorville nurses Pat Smith and Randy Emerson, Unknown Medical Employees of Wexford, and Wexford Health Sources, Inc. ("Wexford") as Defendants.

Plaintiff alleges that he saw Defendants Smith and Emerson at the healthcare facility at Taylorville on February 15, 2022, and informed them that he was experiencing severe pain from a left shoulder injury, burning sensations, and numbness in his left hand and elbow. Plaintiff

requested pain medication, but Defendants allegedly refused to give him any medication because they had not received his medical records from Stateville Correctional Center and advised him to purchase medicine from the commissary. Plaintiff claims that Defendants were deliberately indifferent by refusing to give him pain medication.

Plaintiff also asked Defendants Smith and Emerson for a low bunk permit. Initially, they refused and advised him that a medical director, nurse practitioner, or a physician assistant would need to reauthorize his permit, but no one was onsite at the time to issue the permit. However, Defendants provided Plaintiff with a temporary low bunk permit after observing his left arm in a sling. Plaintiff claims that Defendant Wexford's alleged failure to provide Taylorville with an onsite medical director, nurse practitioner, or physician assistant constituted deliberate indifference to his serious medical needs.

In March 2022, Plaintiff was taken to an outside hospital for an evaluation with orthopedic surgeon, Dr. Ritar. Plaintiff's left shoulder was x-rayed, and he was diagnosed with "a fractured left collarbone and a/c acromicroclavicular [sic] separation that calloused over and improperly healed." *Id.* at 5. Plaintiff states that he later underwent additional x-rays and an MRI of his left shoulder, but he does not indicate when this occurred.

Plaintiff states that he filed approximately sixteen grievances against Taylorville and its physicians regarding the alleged delay and denial of medical care and treatment of his left shoulder injury. Plaintiff was transferred from Taylorville to Graham on May 20, 2022. He received shoulder surgery on September 20, 2022.

Along with failing to provide him with pain medication, Plaintiff claims that Defendants Smith and Emerson were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by refusing to refer him to a doctor in a timely matter for his severe shoulder

injury and by failing to take steps to ensure that he received the needed treatment, despite their knowledge of his serious medical needs.

Regarding the Unknown Medical Employees of Wexford, Plaintiff claims that they were deliberately indifferent by failing to consult with him regarding his shoulder injury in a timely manner, despite their knowledge of his serious medical needs. He claims that the delay of medical treatment was the proximate cause of his pain and suffering.

Additionally, Plaintiff brings a claim against Defendant Wexford under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). He claims that Wexford had a specific policy in the "Wexford Provider Handbook" to restrict, delay, and outright deny medical care, such as surgeries, when such care is expensive. *Id.* at 6-7. According to Plaintiff, Wexford's policy stated:

> "Cost Consideration": A criticism frequently directed toward private managed care programs like Wexford is that services are withheld to improve profits. Similar criticism has been directed at the medical industry in general, implying that cost-money-should never be a consideration in treatment and with progressive-government "Health Care Reform" well become a far greater factor than it has ever been under the "control of the health profession." Consideration in deciding treatment is given to whether or not the Department of Corrections has the responsibility to provide treatment. The mere existence of a condition DOES NOT CONSTITUTE A RESPONSIBILITY FOR REPAIR! When considering alternative treatment approaches, cost becomes a consideration. Even then, it is not the determinate, but only one of several possible variables considered. Meanwhile, the role of the medical staff is to: 1) provide medical care to individual patients, and 2) seek the best quality we can afford and spread our healthcare budget to effectively cover as many services as possible. Cost has been and must continue to be a consideration. The "cost of service" remains an important factor to be shouldered by each healthcare professional. Being fiscally responsible builds a broader range of treatment alternatives.

*Id.* at 7-8. Plaintiff claims that Defendants Smith and Emerson received a copy of the Wexford Provider Handbook and were following this policy when they allegedly denied follow-up care for his shoulder injury.

The Court notes that Plaintiff filed additional exhibits on November 14, 2022, and November 28, 2022. (Docs. 14, 15, 22, and 23). These attachments were not necessary to the amended complaint and were not considered in this rder. *Fitzgerald v. Dep't of Corr.*, No. 07-61, 2007 WL 951861, at *1 (W.D. Wis. Mar. 26, 2007). Furthermore, it is not the job of the Court to "root" through the various exhibits "to make plaintiff's case for him...." *Rahn v. Bd. of Trustees of N. Illinois Univ.*, 803 F.3d 285, 294 (7th Cir. 2015).

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996); *see also Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014) (healthcare providers may exercise their medical judgment when deciding whether to refer a prisoner to a specialist). The failure to refer constitutes deliberate indifference only if it was "blatantly inappropriate." *Id*.

Here, Plaintiff alleges that Defendants Smith and Emerson were deliberately indifferent by refusing to give him pain medication on February 15, 2022, when he told them that he was experiencing severe pain from a left shoulder injury, burning sensations, and numbness in his left hand and elbow. Defendants allegedly told him they were unable to give him pain medication

because they had not received his medical records from Stateville Correctional Center and advised Plaintiff to purchase pain medication from the commissary. Plaintiff does not indicate whether he followed their instructions, but notably, Plaintiff does not allege that pain medicine was unavailable at the commissary, nor does he allege that he made any further requests for pain medication. The failure to treat prolonged pain or even pain of a few hours' duration can amount to deliberate indifference. *See, e.g., Williams v. Liefer*, 491 F.3d 710 (7th Cir. 2007). In this case, however, Plaintiff alleges a denial of pain medicine on a single date. In addition, although Defendants declined to prescribe pain medication, they instructed him that he could purchase it from the commissary. The Court finds that Plaintiff has failed to establish a claim of deliberate indifference against Defendants Smith and Emerson for allegedly failing to address his pain symptoms on February 15, 2022.

Plaintiff also claims that Defendants Smith and Emerson were deliberately indifferent by refusing to refer him to a doctor in a timely matter for his severe shoulder injury and that the delay in treatment was the proximate cause of his pain and suffering. Denying a referral in favor of "easier and less efficacious treatment" may be blatantly inappropriate if it does not reflect sound professional judgment. *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), *as amended* (Aug. 25, 2016). "A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain. Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015) (internal citations omitted). Here, Plaintiff does not allege that he asked Defendants Smith and Emerson to refer him to a doctor or a specialist and that they refused. Plaintiff states that Defendants were nurses at Taylorville, and therefore, no plausible inference

6

can be made that they were somehow responsible for making referrals for inmates to go to an outside hospital for evaluations.

Even if they were responsible for referring inmates to doctors or specialists, there is no indication that they were deliberately indifferent by delaying Plaintiff's medical treatment. Plaintiff states that he encountered Defendants Smith and Emerson on February 15, 2022, and told them that he was experiencing pain his left shoulder, but there is no indication that Defendants knew the extent of his injury or that it required surgery. Only one month later, in March 2022, he was referred to an outside hospital for an evaluation with an orthopedic surgeon and had an x-ray of his left shoulder. There is no indication that a one-month delay between his initial encounter with Defendants Smith and Emerson and his evaluation with the orthopedic surgeon exacerbated his injury or constituted an unreasonable delay. Plaintiff also underwent additional x-rays and an MRI of his shoulder at a later date and had surgery on September 20, 2022. Furthermore, Plaintiff was transferred to Graham in May 20, 2022, and no longer would have been under the care of Defendants Smith and Emerson. Based on these facts, the Court finds that Plaintiff has failed to state a claim of deliberate indifference against Defendants Smith and Emerson. Therefore, Defendants Pat Smith and Randy Emerson are DISMISSED for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

Plaintiff's generalized allegation that "unknown employees of Wexford" failed to consult with him regarding his shoulder injury in a timely manner is too vague to state a claim or put any potential Defendants on notice of the claims against them. FED. R. CIV. P. 8(a)(2); *Ross Bros. Const. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 872 (7th Cir. 2002) (quoting *Davis v. Ruby Foods, Inc.,* 269 F.3d 818, 820 (7th Cir. 2001) ("[t]he essential function of a complaint under the civil rules…is to put the defendant on notice of the plaintiff's claim.")). It is well-recognized that

§ 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Plaintiff does not allege any facts to show that the unknown, unidentified employees caused or participated in the alleged events. *See Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Therefore, Defendants John/Jane Does (Unknown Medical Employees of Wexford) are DISMISSED for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

Plaintiff claims that Defendant Wexford is liable pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978). Private corporations have potential liability under *Monell* if they perform a governmental function and, in doing so, injure plaintiff through an unconstitutional policy or practice. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Since there is no *respondeat superior* liability under § 1983, Wexford cannot be liable for the alleged misdeeds of its employees, as employees are responsible individually. *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007). Wexford has potential liability only if it had an unconstitutional policy, practice, or custom which caused the constitutional deprivation. *Salcedo-Vazquez v. Nwaobasi*, No. 13- 606, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015)). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016)

(citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). Plaintiff must plead a sufficient factual basis for a *Monell* claim, as it is not enough to merely plead the legal elements of the claim. *McCauley v. City of Chicago*, 671 F.3d 611, 617-18 (7th Cir. 2011).

Here, Plaintiff asserts that Wexford had an express policy, *supra*, to restrict, delay, and outright deny medical care, such as surgeries, when such care is expensive. As a result of this policy, he claims that Defendants Smith and Emerson refused to refer him to a doctor for further evaluation of his shoulder injury. Plaintiff cannot prevail on such a claim unless he is able to establish that the policy was applied in such a way as to cause him injury. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 651 (7th Cir. 2021) (no constitutional violation in twenty-month delay while awaiting collegial review approval). Here, there is no indication that this policy was applied in such a way as to cause harm. Plaintiff alleges only one encounter with Defendants Smith and Emerson on February 15, 2022. He does not allege that he requested to be referred to a doctor or specialist during this encounter. One month later, Plaintiff was sent to an outside hospital for an evaluation with an orthopedic surgeon and received an x-ray of his left shoulder. The Court finds that Plaintiff fails to plead a *Monell* claim against Wexford.

Finally, Plaintiff claims that Defendant Wexford's alleged failure to provide Taylorville with an onsite medical director, nurse practitioner, or physician assistant constituted deliberate indifference to his serious medical needs. He does not allege that Wexford had a policy, widespread practice, or custom of understaffing, however. As such, Defendant Wexford is DISMISSED failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's amended complaint is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. As this Court stated in its prior Merit Review Order, this case would be dismissed with prejudice if the amended complaint failed to state a viable federal claim. (Doc. 11 at 6-7). Any further amendment would be futile. This case is closed. The Clerk of Court is directed to enter a judgment pursuant to Fed. R. Civ. P. 58.

2) This dismissal shall count as one of Plaintiff's three allotted strikes pursuant to 28 U.S.C. § 1915(g). The Clerk of Court is directed to record Plaintiff's strike in the three-strike log.

3) Plaintiff's Motion to Request Counsel [21] is MOOT.

4) Plaintiff must still pay the full docketing fee of $350 even though his case has been dismissed. The agency having custody of Plaintiff shall continue to make monthly payments to the Clerk of Court, as directed in the Court's prior Order. (See d/e 1/5/2023).

5) If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. Fed. R. App. P. 24(a)(1)(C). If Plaintiff chooses to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.


ENTERED:   1/30/2023

                                                     s/ Joe Billy McDade
                                                     Joe Billy McDade
                                                     U.S. District Court Judge